UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

HUGO YOBANI RODRIGUEZ
HERNANDEZ,

        Petitioner,

        v.

WARDEN MATTHEW MORDANT,
SECRETARY KRISTI NOEM,
CHARLES PARRA, ACTING
DIRECTOR TODD LYONS, FIELD
OFFICE DIR. GARRETT RIPA,
ATTORNEY GENERAL PAMELA
JO BONDI,

        Respondents,

                              /

Case No. 2:26-cv-607-KCD-NPM

## **ORDER**

Petitioner Hugo Yobani Rodriguez Hernandez has filed a habeas corpus petition challenging his detention by U.S. Immigration & Customs Enforcement ("ICE"). (Doc. 1.)[1] He claims that the Attorney General is holding him without a bond hearing in violation of the Immigration and Nationality Act ("INA") and the Fifth Amendment. (*Id.* at 8-11.)[2] Respondents oppose the petition. (Doc. 10.)

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

[2] The habeas petition is not paginated, so the Court cites the page numbers generated by its electronic filing system.

Hernandez is a citizen of Guatemala. In March 2018, he entered the United States at the Mexican border. He was apprehended, and after a brief interview, an immigration officer denied him admission and ordered his expedited removal. (Doc. 10-1 at 8.) As best the Court can tell, that removal order is final. Hernandez does not claim that he appealed or challenged his removal. (*See* Doc. 1.)

The Government did not keep Hernandez in custody or send him back to Mexico. Instead, it handed him an order of supervision and released him into the country. (Doc. 10-1 at 10-13.) Then, on December 18, 2025, ICE agents arrested him in Fort Myers. He has been in immigration custody ever since, and this habeas petition followed. (Doc. 1.)

To begin, Hernandez argues that his ongoing detention is governed by 8 U.S.C. § 1226. Consequently, he is entitled to a bond hearing that the Government is unlawfully withholding. (Doc. 1 at 9-11.) That argument, however, runs straight into a statutory wall.

Section 1226 applies exclusively to the apprehension and detention of an alien "pending a decision on whether [he] is to be removed from the United States." 8 U.S.C. § 1226(a); *see also Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018). In other words, § 1226 lives entirely in a pre-removal world. And once an order of removal becomes final, § 1226 exits the stage. At that point, a completely different statutory provision—8 U.S.C. § 1231—takes the

reins to govern post-removal detention. *See Zadvydas v. Davis*, 533 U.S. 678, 683 (2001).

Here, Hernandez is not waiting around for a decision on whether he is to be removed. That decision was apparently made years ago. An immigration officer issued a final expedited removal order against him on March 19, 2018. Because Hernandez is subject to a final administrative order of removal, which stands unchallenged, § 1226 simply does not apply to him. He cannot demand a pre-removal bond hearing when his removal proceedings are already over.

Next up is Hernandez's constitutional claim: that his prolonged civil detention without an individualized hearing violates the Fifth Amendment. (Doc. 1 at 8.) "[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. But when it comes to post-removal-order detention, the Supreme Court has set a clear roadmap for how long the Government can hold someone. In *Zadvydas*, the Court recognized that the Government cannot detain someone indefinitely under § 1231 just because their home country is slow to take them back. 533 U.S. at 689. To prevent constitutional problems, *Zadvydas* established a "presumptively reasonable" detention period of six months. *Id.* at 701.

3

Under the *Zadvydas* framework, an alien cannot successfully challenge their detention on due process grounds the moment they are locked up. Instead, they must wait until the six-month mark has passed. *See Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Only *after* those six months have expired does the burden shift to the alien to provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

Look at the calendar here. Following his release in 2018, ICE agents again detained Hernandez on December 18, 2025. Today is May 19, 2026. Counting the days, Hernandez has been in immigration custody for just over five months. Because he has not yet been detained for the six-month period deemed presumptively reasonable by the Supreme Court, his constitutional challenge is premature. *See, e.g., Grigorian v. Bondi*, Case No. 25-CV-22914-RAR, 2025 WL 1895479, at *8 (S.D. Fla. July 8, 2025); *Lopez v. Dir. of Enf't and Removal Operations*, Case No. 3:25-cv-1313-JEP-SJH, 2026 WL 261938, at *12 (M.D. Fla. Jan. 26, 2026); *Guerra-Castro v. Parra*, Case No. 25-cv-22487-GAYLES, 2025 WL 1984300 at *4 (S.D. Fla. July 17, 2025) (finding habeas petition "premature" because "Petitioner has not been detained for more than six months").

As the Supreme Court has long recognized, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation

4

process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). So the executive branch gets a presumptively reasonable six-month runway to do its job, negotiate with foreign governments, and execute a final removal order. *Zadvydas*, 533 U.S. at 701. Because Hernandez remains inside that window, his current custody does not cross the line into the kind of indefinite, arbitrary lockup the Fifth Amendment forbids. Until that clock actually runs out, the Government retains the statutory authority to hold Hernandez while it works to put him on a plane.

Hernandez has failed to present a valid legal argument to disrupt his current custody. His statutory argument under § 1226 completely misreads the INA, which leaves no room for pre-removal bond hearings once an administrative removal order is final. And his constitutional argument under the Fifth Amendment is too early. The Government remains within its presumptively reasonable six-month window to arrange his removal. Because Hernandez's ongoing detention is lawful at this juncture, his challenge cannot succeed. Accordingly, the Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**. The Clerk is directed to terminate all pending deadlines and close the case.

**ORDERED** in Fort Myers, Florida on May 19, 2026.

Kyle C. Dudek
United States District Judge